JUDGE PAULEY



11 CIV 4916

CONOVER LAW OFFICES
Attorneys for Plaintiff
Bradford D. Conover, Esq.
75 Rockefeller Plaza (20th Fl.)
New York, NY 10019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
SUMMER ADAMO,

                            Plaintiff,      ECF Case

     - against -

                                    Case No.

                                    COMPLAINT
MACY'S, INC., ERIC BACHMAN, JUSTIN BRISEE,
and JEANNINE SOTTILE,

                            Defendants.
----------------------------------------------------------------x

       Plaintiff, Summer Adamo, by her attorneys, Conover Law Offices, for her

Complaint against defendants, Macy's, Inc., Eric Bachman, Justin Brisee, and Jeannine

Sottile, (collectively "defendants") respectfully alleges as follows:

### NATURE OF ACTION

       1.     This is an action for damages against defendants for sexual harassment,

gender discrimination, and retaliation against plaintiff in violation of the Civil Rights Act

of 1964, 42 U.S.C. § 2000(e) et seq., as amended in 1972 and 1991 (hereafter "Title VII")

and Title 15 of the New York State Executive Law § 290 et seq. (hereafter "Executive

Law").

## JURISDICTION AND VENUE

2. The jurisdiction of this Court over this controversy is invoked pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions. The Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367(a) over related claims brought under the New York Executive Law.

3. Venue in this Court is proper in that defendants maintain principal offices in this District.

## ADMINISTRATIVE PROCEEDINGS

4. On or about June 8, 2010, plaintiff, Summer Adamo, filed a timely Charge alleging discrimination on the basis of sex and retaliation under Title VII with the Equal Employment Opportunity ("EEOC"), bearing Charge No. 520-2010-02531.

5. The EEOC issued a Notice of Right to Sue Letter dated May 3, 2011, more than 180 days after the filing of the Commission Charge, and within 90 days of filing the Complaint in this Court. A copy of the Right-to-Sue Letter is annexed hereto as Exhibit A.

## PARTIES

6. Plaintiff Summer Adamo ("Plaintiff" or "Ms. Adamo") resides in Ulster County and the State of New York.

7. At all relevant times, defendant, Macy's Inc. ("Macy's"), is and was a domestic corporation organized and existing under the laws of the State of New York, with its principal place of business at 151 West 34th Street New York, New York 10001, and, upon information and belief, employs thousands of employees.

8. At all relevant times, defendant, Macy's, met the definition of an "employer" under all applicable statutes.

9. At all relevant times, Ms. Adamo met the statutory definition of an "employee" under all applicable statutes.

10. At all relevant times, defendant Macy's operated a retail establishment called Macy's East in the County of Ulster.

11. At all relevant times, defendant, Eric Bachman ("Mr. Bachman"), is and was an employee of the defendants and the Vice President and Store Manager of Macy's East at the Hudson Valley Mall, in Kingston, New York.

12. At all relevant times, defendant, Justin Brisee, ("Mr. Brisee"), was employed by Macy's as Operations Manager at Macy's East at the Hudson Valley Mall, in Kingston, New York.

13. At all relevant times, defendant, Jeannine Sottile, ("Ms. Sottile"), was employed by Macy's as Human Resources Manager at Macy's Kingston and Poughkeepsie, New York offices.

## FACTS

14. On or about February 7, 2009, Macy's hired Ms. Adamo as a Clinique Counter Manager at Macy's East at the Hudson Valley Mall, in Kingston, New York.

15. Ms. Adamo was supervised by the Operations Manager, Mr. Brisee and by the Store Manager, Mr. Bachman.

16. Ms. Adamo's job performance was always satisfactory or better.

3

17. Throughout her tenure at Macy's, Ms. Adamo achieved consistently "outstanding" sales performance, and, as a result, the Macy's East store in Kingston was ranked Number 1 in Clinique sales.

18. Adamo received bonuses in recognition of her excellent job performance, and complimentary memos from her supervisor, Mr. Bachman.

19. On or about the week of June 24, 2009, Mr. Brisee began to spend time talking to Ms. Adamo at the Clinique counter about his personal life, and suggested that Ms. Adamo go to lunch with him.

20. In or about June 2009, Mr. Brisee warned Ms. Adamo over lunch to be careful of Rob, the loss prevention officer, because Mr. Brisee believed that Rob might be watching her on the security cameras.

21. At the lunch and on other occasions, Mr. Brisee discussed his troubled relationship with his girlfriend, and, in response Ms. Adamo advised Mr. Brisee that she was married.

22. One evening in late June 2009, Mr. Brisee remained at the Clinique counter talking to Ms. Adamo about personal matters for over two hours after his work shift had ended.

23. On another occasion, Mr. Brisee asked Ms. Adamo to accompany him to a store room in the back of the store.

24. As she did not wish to offend her supervisor, Ms. Adamo accompanied Mr. Brisee to the door to the store room, but did not enter it and, instead, remained in the hallway, near the security camera, when Mr. Brisee suddenly leaned in and kissed her on the mouth.

25. Stunned, Ms. Adamo said nothing and quickly left the store, and the next day, Mr. Brisee called Ms. Adamo at the Clinique counter and apologized.

26. When Ms. Adamo later reiterated that she did not want a relationship with Mr. Brisee, he responded: "You can't be mean to me, or I can write you up."

27. On or about July 5, 2009, Ms. Adamo told Mr. Brisee while at work that she was only interested in a platonic relationship, and he responded by stating: "I am not going to lose you, and I don't care if I end up in HR over this."

28. Ms. Adamo attempted to avoid Mr. Brisee without offending him, but he often visited and remained at the Clinique counter.

29. On or about July 7, 2009, Ms. Adamo's husband, Anthony Adamo ("Mr. Adamo"), received a telephone call from a male caller who stated: "There is a relationship going on between Summer [Adamo] and Justin [Brisee]."

30. Ms. Adamo, suspecting that Mr. Brisee had placed the call, immediately called him and requested that he stop harassing her and her husband.

31. At work the next day, Mr. Brisee again warned Ms. Adamo: "I am not going to lose you," and later advised her that he watched her during the day from the store security camera.

32. On or about July 14, 2009, Ms. Adamo reported Mr. Brisee's stalking and sexual harassment to the Store Manager, Mr. Bachman.

33. Mr. Bachman responded by advising Ms. Adamo not to worry about Mr. Brisee hanging around her counter, as that's "just how it is in a small store."

34. On or about July 17, 2009, Mr. Adamo received text messages stating: "It is still going on."

35. On or about July 19, 2009, Ms. Adamo began receiving email messages from Mr. Brisee on "MySpace" posted by Ms. Adamo and her husband, and she replied by email to Mr. Brisee requesting that he "leave [her] alone."

36. On or about July 20, 2009, Ms. Adamo reported to Rob, the security and loss prevention officer, that she was having problems with Mr. Brisee, and asked that Rob keep an eye out for anyone watching her on the cameras.

37. When Mr. Brisee saw Ms. Adamo speaking with the loss prevention officer, he followed her to the parking lot, and angrily asked: "Why are you doing this to me?"

38. When Ms. Adamo told Mr. Brisee to leave her alone, he responded: "I am in love with you," then got in his car and drove off.

39. Later that same day, after Rob apparently reported the harassment to Macy's Human Resource Manager, Jeannine Sottile ("Ms. Sottile"), Ms. Sottile met with Ms. Adamo, and Ms. Adamo agreed, at Ms. Sottile's request, to write a summary of the sexual harassment and stalking.

40. On or about July 22, 2009, Ms. Sottile advised Ms. Adamo that she was on leave with pay "for her own safety."

41. On or about July 27, 2009, Ms. Sottile met with Ms. Adamo at the Poughkeepsie office and Ms. Adamo provided her with a summary of the sexual harassment and stalking by Mr. Brisee.

42. Beginning on or about July 31, 2009 through August 19, 2009, Ms. Adamo received several telephone calls and voice mail messages from Ms. Sottile advising her that "an investigation" was ongoing, but advising her that the security

6

surveillance video camera by the store had not been working on the day Mr. Brisee kissed Ms. Adamo without her consent.

43. On August 19, 2009, Ms. Sottile called and advised Ms. Adamo, contrary to her earlier statement, that the reason Mr. Brisee's sexual harassment could not be corroborated was because the surveillance video tape was only retained for 30 days.

44. Ms. Sottile further advised that Ms. Adamo would be removed from her position as the Clinique counter manager at the Kingston store.

45. Ms. Adamo voiced her concern about Mr. Brisee remaining at the Kingston store and requested that if she was going to be removed from the store she should be transferred to a cosmetics counter in another Macy's store.

46. Ms. Sottile advised her that there was an available position in the "Young Men's Department" at Macy's Poughkeepsie store.

47. In response, Ms. Adamo advised Ms. Sottile that her entire career had been in cosmetics, and that she had no experience or interest in the "Young Men's Department" in Poughkeepsie, and when she asked whether Macy's would offer her a position in cosmetics in another store, Ms. Sottile answered: "no."

48. When Ms. Adamo asked whether disciplinary action had been taken against Mr. Brisee and whether he had been removed from the Kingston store, Ms. Sottile responded that she could not disclose it, but that he had not been terminated and would remain at the Kingston store.

49. Ms. Adamo advised Ms. Sottile that she believed that the investigation was inadequate and that Macy's actions in removing her from the Kingston store and not

transferring her to a comparable position in cosmetics were retaliatory for her having reported Mr. Brisee's sexual harassment.

50.     During the same telephone call, Ms. Sottile advised Ms. Adamo that if she did not accept the job offer in the "Young Men's Department" at Macy's Poughkeepsie store, she would be terminated.

51.     Subsequently, Ms. Adamo applied for advertised cosmetics positions at various Macy's stores for which she was qualified, but she was not offered any cosmetics position.

52.     On or about June 8, 2010, Ms. Adamo filed her Charge of unlawful gender discrimination and retaliation against defendants with the Equal Employment Opportunity Commission (the "EEOC").

53.     After filing her sexual harassment internal complaint with Human Resources and her Charge with the EEOC, Ms. Adamo's employment was terminated, and she was repeatedly denied transfer opportunities by defendants, despite meeting or exceeding the job qualifications.

54.     Upon information and belief, Mr. Brisee subjected two other female Macy's employees to sexual harassment, both before and after Ms. Adamo's termination, and Macy's failed to take appropriate remedial action.

55.     Upon information and belief, after Ms. Adamo was terminated, Mr. Brisee engaged in an assault with a weapon at work, for which he was ultimately terminated.

56. Upon information and belief, defendants rejected Ms. Adamo's applications for cosmetics positions because she asserted her legal rights by filing a discrimination and sexual harassment Charge against defendants.

57. Defendants' actions in terminating Ms. Adamo's position as Clinique counter manager and refusing to reinstate her to an equivalent position were discriminatory based on her gender and were in retaliation for her complaints of sexual harassment, all in violation of Title VII and the New York State Executive Law.

58. Defendants actions in rejecting Ms. Adamo's employment applications was in retaliation for Ms. Adamo's filing a discrimination Charge against defendants in violation of Title VII and the New York State Executive Law.

59. Ms. Adamo was subjected to ongoing discrimination on account of her gender and complaint of sexual harassment and was terminated on account of impermissible discrimination and in retaliation for complaining about the discrimination and hostile work environment.

60. Each of the individual defendants personally participated in the discriminatory conduct and occupied supervisory positions with the power over plaintiff to do more than carry out personnel decisions made by others.

61. During the period of Ms. Adamo's employment, defendants condoned and encouraged a policy and practice of discriminating against and harassing Ms. Adamo; subjected her to a hostile work environment; failed to provide her with an adequate means of complaint and redress; and retaliated against her.

62. Since her termination, Ms. Adamo, despite a diligent job search with many prospective employers, has been unable to secure comparable employment.

9

63. As a result of the foregoing, Ms. Adamo has suffered, and continues to suffer, loss of income, extreme emotional distress, humiliation, and damage to her reputation and career.

### FIRST CLAIM FOR RELIEF BY ADAMO
### AGAINST MACY'S
### FOR DISCRIMINATION AND RETALIATION
### BASED ON GENDER UNDER TITLE VII

64. Plaintiff repeats and re-alleges the allegations in paragraphs 1-63 as if fully set forth herein.

65. By reason of the foregoing, plaintiff, because of her gender, was sexually harassed by her supervisor; denied terms and conditions of employment; was subjected to a hostile environment; and was discharged by defendants in violation of Title VII.

66. Plaintiff, because she complained of discrimination and sexual harassment based on her gender, was subjected to retaliation in that she was denied terms and conditions of employment; was discharged by defendants in retaliation for her complaint of gender discrimination and sexual harassment; and was denied employment opportunities in violation of Title VII.

67. As a result of defendants' willful, knowing and intentional discrimination and retaliation, plaintiff sustained substantial losses in employment benefits and suffered and continues to suffer humiliation, and mental distress and anguish.

### SECOND CLAIM FOR RELIEF BY ADAMO
### AGAINST DEFENDANTS FOR DISCRIMINATION AND RETALIATION
### BASED ON GENDER UNDER THE NEW YORK STATE
### EXECUTIVE LAW § 290 ET SEQ.

68. Plaintiff repeats and re-alleges the allegations in paragraphs 1- 67 as if fully set forth herein.

69. By reason of the foregoing, plaintiff, because of her gender and complaints of sexual harassment, was denied terms and conditions of employment; was subjected to a hostile environment; was subjected to retaliation; and was terminated by the defendants in violation of the New York State Executive Law § 296.

70. Individual defendants participated in the discrimination; had the power to make personnel decisions; and aided and abetted the discrimination in violation of the New York State Executive Law § 296.

71. As a result of defendants' willful, knowing and intentional discrimination, plaintiff sustained substantial losses in earnings and other employment benefits, future pecuniary losses and has suffered and continues to suffer humiliation, mental and physical distress and anguish.

**WHEREFORE,** plaintiff respectfully requests that the Court enter judgment in plaintiff's favor and against defendants, containing the following relief:

A. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate plaintiff for all monetary and/or economic damages, including but not limited to, the loss of past and future income, wages, compensation, seniority and other benefits of employment;

B. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate plaintiffs for all non-monetary and/or compensatory damages, including but not limited to, compensation for her mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, and emotional distress;

C. An award of damages for any and all other monetary and/or non-monetary

losses suffered by plaintiff in an amount to be determined at trial, plus prejudgment interest;

    D.    An award of punitive damages;

    E.    An award of costs that plaintiff has incurred in this action, as well as plaintiffs' reasonable attorneys' fees to the fullest extent permitted by law; and

    F.    Such other and further relief as the Court may deem just and proper.

**PLAINTIFF HEREBY DEMANDS TRIAL BY JURY ON ALL CLAIMS FOR RELIEF**

Dated: New York, New York
July 14, 2011

                                    CONOVER LAW OFFICES
                                    Attorneys for Plaintiff

By: _____
                                    Bradford D. Conover, Esq.
                                    75 Rockefeller Plaza (20th Fl.)
                                    New York, NY 10019
                                    (212) 588-9080

**Exhibit A**

EEOC Form 161 (11/09)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Summer Adamo<br>115 South Ohioville Road<br>New Paltz, NY 12561 | From: | New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|---|---|

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2010-02531 | V. Guest, Investigator | (212) 336-3620 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

- NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

On behalf of the Commission

/s/ Kevin J. Berry

Kevin J. Berry, District Director

MAY 03 2011
(Date Mailed)

Enclosures(s)

cc: **MACYS EAST**
c/o Kelley E. Stoppels, Esq
7 West Seventh Street
Cincinnati, Ohio 45202

Molly Smithsimon, Esq.
Conover Law Offices
75 Rockefeller Plaza, 20th Floor
New York, NY 10019